WILLIAM KŒLLE *et al.*

*v.*

DANIEL KNECHT *et al.*

*Filed at Mt. Vernon, June 21, 1881.*

</div>

1. RIGHT OF WAY—*when appurtenant to land.* Where the owner of land grants a right of way over his land for a switch from a railroad to the land of one of the grantees, to be used by the grantees and others for railroad and switch purposes, and the owners of such right of way purchased eighty acres of land from another, over a part of which the switch was constructed, so as to reach the coal land of one of the grantees, the grantor contributing nothing

to the expense of grading and bridging the track for the switch, it was *held*, that this right of way became appurtenant to the coal land of the grantee, to which the switch was constructed.

2. SAME—*appurtenant by reservation.* A right of way appurtenant may be reserved in a conveyance as effectually as by a grant by deed. Hence, in a grant of a right of way for a railroad switch, the words, "and upon the further consideration that said grantees permit said grantor to use said switch and railroad, the same as the grantees," amount to a legal and binding reservation of a use in common with the grantees of the right of way granted, but they do not confer any right in the grantor over other land afterwards bought by the grantees for an extension of the right of way to their lands, in the absence of any agreement to that effect, and do not even reserve a right of way appurtenant over the grantees' tract of land.

3. EASEMENT—*right of way, when not capable of conveyance.* An easement or right of way appurtenant or appendant to an estate in fee in land, or in gross to the person of the grantor for life or for years, is incapable of alienation or conveyance in fee. When in gross, it is purely personal to the holder, and when appurtenant, it is attached to and is an incident to the land, and passes with it, whether the land be conveyed for a term of years, for life, or in fee. It is an incident to the land, and can not be separated from or transferred independent of it. Sec. 13 of the Conveyance act has no application to easements created outside of the title to land, whether appurtenant or in gross.

4. RAILROAD—*private switch from railroad is not a public way.* A private switch from a railroad to coal lands, which is not owned by the railway company, but by individuals for their own private use, is not a public highway, within the meaning of section 12, article 11, of the constitution, and therefore is not free to all persons for the transportation of their persons and property thereon. That section applies only to public railroads.

APPEAL from the Circuit Court of St. Clair county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

This was a bill filed by Daniel Knecht and Augustus Lenz, against William Kœlle, John Kœlle and Christian Kœlle, and the Louisville and Nashville Railroad Company, to enjoin the carrying of freight or coal over the complainants' switch on their land, except the freight and coal of complainants, or persons licensed by them. A decree was rendered in accordance with the prayer of the bill.

Mr. CHARLES W. THOMAS, for the appellants:

The deed from Christian Kœlle granted a right of way over the grantor's lands, for the benefit of the grantor as well as of the grantees, it providing that the switch might be used by the grantees and others for railroad and switch purposes.

That deed provides, that it is executed upon the consideration that the grantees shall permit the grantor to "use said switch and railroad, the same as the grantees." This clause refers to the whole structure, and is a complete and perfect reservation of a right appurtenant to Kœlle's land. It is contended that this was a reservation of a right in gross to Kœlle himself, and that it died with him.

The fact that the reservation appears, in a literal sense, to be to the grantor in person, is of no weight. In *Winthrop* v. *Fairbank*, 41 Me. 307, the grantor used these words, "reserving to myself the privilege of passing with teams, etc., across the same, in suitable places, to land I own to the south of the premises," and they were held to confer the benefit of the exception in favor of the grantor, his heirs and assigns, as occupants of the remaining lands belonging to him south of the premises, the privilege reserved being appurtenant to those lands. See, also, *Bowen* v. *Conners*, 6 Cush. 132; *Garrison* v. *Rudd*, 19 Ill. 564; *Karmueller* v. *Kurtz*, 18 Iowa, 352.

Although it is within the power of one selling his land to reserve to himself a right in gross, yet as such right is less permanent and beneficial, the law always favors and presumes, when such a construction can fairly be made, that the right is not in gross, but an easement appurtenant. 2 Wait's Actions and Defences, 665.

The second source of appellants' right to have their coal hauled over the switch in question, is the law which makes the switch part of a public highway, free to all the people who may have occasion to use the same. Const. 1870, sec. 12, art. 11.

Messrs. HAY & KNISPEL, for the appellees:

Deeds are to be most strongly construed against the grantor, (*City of Alton* v. *Illinois Transportation Co.* 12 Ill. 38,) and it will therefore take stronger words to create an easement by reservation than by direct grant.  *Suffield* v. *Brown*, 4 DeG. T. & S. 185; 2 Wait's Act. and Def. 665.  And easements which will pass by implication in a grant, will not be implied by a reservation.  2 Wait's Act. and Def. 663; *Bern* v. *Mills*, 21 Wend. 290.

Applying these rules of construction to the reservation in question, we must construe the same to be a reservation of the right in gross, personal to the grantor himself; and if it is such an easement in gross, only, it is not assignable or inheritable.  Washb. on Easements, p. 11.

In the case of *Garrison* v. *Rudd*, 19 Ill. 558, the court defines easements as follows:  "They are said to be appendant or appurtenant when they are incident to an estate,—one terminus being on the land of the party claiming, must inhere in the land, concern the premises, and be essentially necessary to their enjoyment.  They are of the nature of covenants running with the land, and, like them, must respect the thing granted or demised, and must concern the land or estate conveyed.  They pass by a conveyance of the land, under the term 'appurtenances,' without being expressly named."  And such an easement is appurtenant to all and every part of the land, no matter into how many parts it may be subdivided on sale,—to each part, however small, it attaches.  It is to be enjoyed by all the owners of the estate to which it is incident, and can not be separately sold and conveyed to another.

The right is said to be in gross when it is not attached as an incident to an estate, and is conferred by deed, or by reservation in a deed, the distinction being quite manifest between a grant of land where a way is appendant which carries the way, and a grant of way separate from any estate, in gross or specially.

That such a reservation is a personal right or appurtenance in gross, counsel cited *Ackroyd* v. *Smith*, 70 Eng. C. L. R. 164; *Wagner* v. *Hanna*, 38 Cal. 111.

But if the reservation was of an easement appurtenant, it was to Kœlle's land, and none other. The bill does not pray for an injunction against operating the switch on Kœlle's land.

An easement may pass, without express mention, as an incident to the grant of the adjacent premises; but the fee in one piece of land, not mentioned in the deed, will not pass as appurtenant to another tract granted by an accurate description, giving it a definite and limited boundary. *Gebhard* v. *Reeves*, 75 Ill. 307; *Jackson* v. *Hatchaway*, 15 Johns. 448; *Tyler* v. *Hannon*, 11 Pick. 193; *O'Lindar* v. *Lathrop*, 21 id. 292.

An easement appurtenant reserved in a deed is limited to the land granted, and does not extend to after acquired land. Washb. on Easements, 49; *Stearns* v. *Mullen*, 4 Gray, 151; *Smith* v. *Porter*, 10 id. 67. A right of way can only be raised out of the land granted or reserved by the grantor, and never out of the land of a stranger. *Oliver* v. *Hook*, 47 Md. 301.

The constitutional provision has no reference to a road of this kind—a mere private switch. See *Hoyt* v. *Chicago, Burlington and Quincy Railroad Co.* 93 Ill. 601.

Mr. JUSTICE WALKER delivered the opinion of the Court:

In November, 1870, Christian Kœlle, in consideration of $200 paid to him by Daniel Knecht, Alpheus Boling and Joseph Schmisseur, granted to them a right of way, in this language: "I, for the consideration hereinafter named, do hereby convey to Daniel Knecht, Joseph Schmisseur and Alpheus Boling the right of way for a switch, from the St. Louis and Southeastern Railway across my land, fifteen feet wide, to the lands of the said Schmisseur, near the turnpike, where the same was located by the said railroad company

by its engineer, in section 6, township 1 north, range 8 west, in St. Clair county, Illinois, to be used by said grantees and others for railroad and switch purposes, and when not so used, to revert to me, said grantor, otherwise to remain the property of said grantees and their heirs and assigns forever, for the uses and purposes named."

Boling sold out his interest to Lenz, who took his place in the enterprise before the switch was constructed. The complainants then purchased an 80-acre tract of land, a part of which lay between the land of Kœlle and Schmisseur, to have and control the right of way between the railroad track and Schmisseur's land. They graded, bridged and prepared the road bed between the railroad track and Schmisseur's land, ready for the ties and rails, at their own expense. When prepared, the railroad company laid the ties and rails, under an agreement with the owners of the way, to Schmisseur's land, and hauled out large quantities of coal for them. Kœlle contributed nothing to paying the expense of grading or laying the track for this switch. The owners of the right of way have not conveyed or bargained to convey that right of way to the railroad company. It only uses this track under their agreement to haul complainants' coal over it. We are clearly of opinion that this right of way became appurtenant to the Schmisseur land.

The agreement, under seal, by which the right of way was granted to Knecht, Boling and Schmisseur, in a subsequent clause contains this reservation: " And upon the further consideration that said grantees permit said grantor to use said switch and railroad, the same as the grantees." A right of way appurtenant may be reserved in a conveyance as effectually as by a grant by deed. Hence this was a legal and binding reservation of a use, in common with his grantees, of the right of way. This would seem to be manifest, and so clear that the mere statement of the proposition demonstrates its correctness. Even if it could be held to attach to and become a part of the land over which the right was

26—99 ILL.

granted, still it would be impossible to hold that it attached to the land of Kern that lies between appellants' land and the main track of the railroad. The grantees did not, at the time, own this Kern tract, and were unable, if they had desired, to attach the right of way to it, or fasten it upon that tract by a future purchase. Appellees were, after they acquired the right of way from Kœlle, compelled to purchase this Kern tract to reach the main track of the railroad, to render their right of way over Kœlle's land of any use to them. And it is impossible to see, in the absence of all agreement, in what manner Kœlle acquired any right to use the right of way over the track on the Kern land. He contributed nothing to its purchase, or the construction of the switch over it, and the decree only restrains appellants from using the switch over the Kern tract. This is the extent of the decree.

A number of the cases to which appellants' counsel refers, to show this reservation operated as a right of way appurtenant, had the element of a way from necessity, and that was, no doubt, an important consideration, contributing to, if not controlling, the construction given in those cases. But there is no element of that character in this case, as the evidence shows that this tract of land of appellants, on which they mine their coal, is not cut off from the main track of the railroad by the lands of other owners, but that track runs over or adjoining to the entire end of their tract of land. Hence there can be no claim of a right of way from necessity. So that, in any view that can be taken of the case, there was not reserved an appurtenant right of way over either the Kœlle tract or the Kern tract.

It is, however, urged, that under the 13th section of our Conveyance act, this reservation operated to create an inheritable or appurtenant easement, that inhered to and passed with the land. That section provides, that "every estate in lands which shall be granted, conveyed or demised, although other words heretofore necessary to transfer an

estate of inheritance be not added, shall be deemed a fee simple estate òf inheritance, if a less estate be not limited by express words, or does not appear to have been granted, conveyed or demised by construction or operation of law." We are unable to see that this section has or can have the slightest application to this case. An easement of this character is incapable of conveyance in fee. It is appurtenant or appendant to an estate in fee in lands, or in gross to the person of the grantor for life or for years; but that is incapable of alienation or transfer. When in gross, it is purely personal to the holder. When appurtenant, it is attached to, and is an incident to, the land, and passes with it, whether the land be conveyed for a term of years, for life, or in fee. It is an incident to the land, and can not be separated from or transferred independent of the land to which it inheres. Washburne on Easements, p. 10.

The 13th section only professes to apply to grants, conveyances or demises of title to lands, and does not apply to mere easements created outside of the title to the land. If lands were so conveyed or demised as to be controlled by that section, then all appurtenances, such as ways inhering to the land, would, no doubt, pass as an incident to the land. But that section has no application whatever to the creation or reservation of right of way over the land of another, whether the right be appurtenant or in gross. We have no power to apply a statute to subjects not embraced in its purview, and this case is not so embraced.

It is urged that under section 12, article 11, of the constitution, this is a public railroad, free to all persons for transportation of persons or property. That section provides, that "railways heretofore constructed, or that may hereafter be constructed in this State, are hereby declared public highways, and shall be free to all persons for the transportation of their persons and property thereon, under such regulations as may be prescribed by law," etc. This manifestly refers to railroads constructed for public, as contradistinguished from

private, use,—to railroads constructed and used as common carriers, and not to such structures built by individuals on their own lands, and used to subserve their individual and private interests.    It would work monstrous wrong and injustice to compel an individual who had constructed a railroad across his farm, to assume the duties and liabilities of a common carrier against his will, and transport over his road all commodities that the adjoining land owner or his neighbors might require.    Those who made that instrument did not intend to impose such duties and liabilities on private individuals against their will.    It was only public railroads they intended to regulate, and this switch is not of that character.    This switch does not, as far as this record discloses, belong to the 'Louisville and Nashville Railroad Company.    The right of way belongs to appellees. They made the bridges, and prepared the grade ready to receive the ties and rails.    By contract with appellees, the company put in place the ties and rails, and furnish and send over the switch locomotives and cars to carry to the road of the company, for transportation, the coal of appellees.    This is all done under contract.    As well claim, that because a farmer hires a neighbor's team to haul his grain over a road on his farm to the public highway, and thence to market, the road in his inclosure thereby becomes public, and might be traveled by all persons who might choose.    The railroad having no title to this switch, is not affected by the constitutional provision above quoted.

It is urged that we should give a liberal construction to this reservation, because it is necessary to the use of appellants' coal mine.    This is a misapprehension, as the evidence shows that the land on which their mine is situated adjoins the railroad track of the Louisville and Nashville Railroad, and appellants can construct a switch of their own, and form a connection with that road without passing over the land of any other person.

We are unable to perceive any error in this record, and the decree of the court below is affirmed.

*Decree affirmed.*